UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| SHANNA MCKINNEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 13-12-ART |
| | ) | |
| v. | ) | |
| | ) | |
| ICG, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| CLOVA PRATER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 13-13-ART |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| ICG, LCC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The defendants removed these two cases from state court under 28 U.S.C. § 1332, but failed to include proof that the amount in controversy here satisfies the jurisdictional minimum. When prompted to do so, all they offered were unsupported inferences drawn from a few bare details. Such a showing falls short of the proof required to establish federal diversity jurisdiction. The Court must therefore remand the case back to state court.

## BACKGROUND

These two cases arise out of the same highway accident in Kentucky. The plaintiffs, Shanna McKinney and Clova Prater, were passengers in a Jeep driven by Benny Moore, Jr.

*McKinney*, R. 1-1 at 3 ¶ 7; *Prater*, R. 1-1 at 3 ¶ 7.[1]  Timothy Martin rear-ended them with enough force to dent the rear-hatch door and cause the airbags to deploy. *McKinney*, R. 1-1 at 3 ¶ 7; *Prater*, R. 1-1 at 3 ¶ 7; *see also id.*, R. 4-3 (showing damage to the Jeep). McKinney and Prater filed separate suits in Johnson County Circuit Court against Martin and his employer, International Coal Group ("ICG"). *McKinney*, R. 1-1; *Prater*, R. 1-1.  Though their suits are separate, the plaintiffs' claims are identical.  They allege that Martin's negligent driving caused the accident and assert that ICG shares liability because Martin was acting within the scope of his employment when the accident occurred.  *McKinney*, at 4 ¶¶ 9–13; *Prater*, R. 1-1 at 4 ¶¶ 9–13.  The plaintiffs seek damages for:  (1) past and future medical expenses; (2) past and future mental and physical pain, suffering, and inconvenience; (3) past and future lost wages; and (4) miscellaneous expenses incurred due to the accident, such as travel costs.  *McKinney*, R. 1-1 at 4–5 ¶¶ f–j; *Prater*, R. 1-1 at 4–5 ¶¶ f–j.

The defendants removed both suits to federal court by asserting diversity jurisdiction under 28 U.S.C. § 1332, but failed to include any evidence that the amount in controversy exceeded the jurisdictional threshold. *McKinney*, R. 1 at 2 ¶¶ 4–5; *Prater*, R. 1 at 2 ¶¶ 4–5. Concerned that it might lack subject-matter jurisdiction, the Court ordered the defendants to produce evidence of the amount in controversy. *McKinney*, R. 4; *Prater*, R. 3.  Before the Court ruled on the defendants' response to its show cause orders, the plaintiffs filed motions to remand on the amount-in-controversy issue. *McKinney*, R. 7; *Prater*, R. 6.  Now that the

---

[1] For brevity's sake, the Court will use a modified citation system to refer to the two cases at issue here. Records from *McKinney v. ICG, LLC*, No. 7:13-cv-12 (March 1, 2013), will be cited as "*McKinney*, R. __." Records from *Prater v. ICG, LLC*, No. 7:13-cv-13 (March 1, 2013), will be cited as "*Prater*, R. __."

2

defendants have fully responded to the show cause orders and the motions, the Court considers the jurisdictional issue.

## DISCUSSION

The defendants have the burden of proving that jurisdiction is proper here. Yet the evidence they present to satisfy the amount-in-controversy requirement leaves an inordinate amount of guesswork for the Court. Consequently, the Court must remand the case.

**I.     The Amount-in-Controversy Requirement**

The defendants must affirmatively come forward with evidence showing it is more likely than not that the plaintiffs' claims exceed $75,000. Since the defendants removed these cases from state court, they bear the burden of proving that the requirements for diversity jurisdiction—including the amount in controversy—are satisfied. *Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.,* 621 F.3d 554, 559 (6th Cir. 2010) (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 130 S.Ct. 1181, 1194–95 (2010)). That burden is not an insubstantial one.

Where, as here, the complaint seeks an unspecified amount of damages "that is not self-evidently greater or less than the federal amount-in-controversy requirement," the removing defendants must carry its burden by a preponderance of the evidence. *Gafford v. Gen. Elec. Co.,* 997 F.2d 150, 158 (6th Cir. 1993), *abrogated on other grounds by Friend,* 530 U.S. 77; *see McKinney*, R. 1-1 (seeking unspecified damages); *Prater*, R. 1-1 (same). The preponderance-of-the-evidence test requires the defendants to support their claims to jurisdiction by producing "competent proof" of the necessary "jurisdictional facts." *Gafford,* 997 F.2d at 160 (quoting *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189

3

(1936)). Thus, if the defendants do not produce evidence showing it is more likely than not that the plaintiffs' claims exceed $75,000, the cases must be remanded to state court. *See id.* at 158−60.

The defendants' reliance on the Fifth Circuit's "legal certainty" test is misplaced. *See McKinney*, R. 8 at 4 (citing *De Aguilar v. Boeing, Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995)); *Prater*, R. 7 at 4 (same). First, the Fifth Circuit's test does not apply in this Court; the Sixth Circuit's preponderance-of-the-evidence test does. *See Gafford*, 997 F.2d at 158. Second, even under the Fifth Circuit's test, the Court would not put any burden on the plaintiffs unless the defendants present evidence "that the amount in controversy actually exceeds the jurisdictional amount." *De Aguilar*, 47 F.3d at 1411. As explained below, the defendants fail to do so. So there is no reason to apply the "legal certainty" test.

**II.     The Proof of the Amount in Controversy in Both Cases**

The defendants offer the same basic proof in both cases. They point to: (1) three post-accident photographs of the Jeep; (2) the fact that the plaintiffs provided various unspecified "medical records and bills" to the defendants before the suit; (3) the allegations in the plaintiffs' respective complaints; and (4) each plaintiff's refusal to stipulate that she will not seek more than $75,000 worth of damages in this case. *McKinney*, R. 4 at 3−5; *id.*, R. 8 at 3−6; *Prater*, R. 4 at 3−5; *id.* R. 7 at 3−6. Though the Court does not aggregate the damages claims, *see Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006), it analyzes the evidence collectively for brevity's sake.

4

The "proof" the defendants offer reads more like a Fermi problem.[2] It lays out the barest details, and asks the Court to make all the inferences necessary to reach the conclusion. While such an exercise is wonderful in the classroom, it does not satisfy the burden of proof here.

***Photographs of the Accident:*** The defendants provide three pictures taken from the scene of the accident. *See McKinney*, R. 5-3; *Prater*, R. 4-3. The pictures show what appears to be a late-model Jeep Grand Cherokee with fairly significant damage to the rear hatch door and a deployed airbag. *See McKinney*, R. 5-3 at 1–3; *Prater*, R. 4-3 at 1–3. While a picture is usually worth a thousand words, these photographs say nothing about what the plaintiffs' claims are worth.

Initially, since the plaintiffs do not seek compensation for the damage to the Jeep, it is not part of the amount in controversy here. *See Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 573 (6th Cir. 2001) (holding that the amount in controversy is comprised of the direct pecuniary value of "the damages sought by Plaintiffs in their original complaint"). Neither complaint seeks an award for the cost of repairing or replacing the Jeep. *See McKinney*, R. 1-1 at 4–5 ¶¶ f–j; *Prater*, R. 1-1 at 4–5 ¶¶ f–j. But how can that be? Why would they omit such an obvious part of their claim? The information in the complaints suggests the most likely answer: neither plaintiff owned the Jeep. At the time of the accident, Moore was driving the Jeep—not one of the plaintiffs. *See McKinney*, R. 1-1 at 3 ¶¶ 7–8 (alleging that Benny Moore, Jr. was driving the Jeep); *Prater*, R. 1-1 at 3 ¶¶ 7–8

---

[2] Enrico Fermi, the winner of the 1938 Nobel Prize for Physics and a professor at the University of Chicago, was famous for asking his students to estimate quantities with seemingly insufficient information. The most famous example being: "How many piano tuners are there in Chicago?" *See* Brendan Kelly, Authentic Learning Activities in Middle School Mathematics: Number & Operation 16–17 (2000).

5

(same). Given that the driver of the vehicle is usually the owner, Moore almost certainly owns the Jeep. And because the owner is the only one who deserves compensation for the damage to a vehicle, there would be no point to the plaintiffs including it in their claims. Thus, the damage to the Jeep is not part of the amount in controversy here.

And even if one of the plaintiffs is bringing a claim based on the damage to the Jeep, the pictures do not reveal the cost of that damage. If anything, they suggest it would be for a fairly small amount. The pictures show what appears to be a relatively low-impact collision that did fairly little damage to the Jeep. While the metal portion of the rear-hatch door and the bumper are crumpled inward, the rear window and the tail lights are completely intact. *See McKinney*, R. 5-3; *Prater*, R. 4-3. Given that moderate amount of body damage, the Jeep clearly was not totaled. That means the Blue Book value of the car—which would provide some means of measuring the value of the claim—is irrelevant.[3] The only repair work that it seems to need is some body work on the rear hatch door and a reloading of the driver's side airbag. And since the defendants do not provide an estimated cost of repair, assigning any dollar value to the claim would require "pure speculation" from the Court. *Ramsey v. Kearns*, No. 12-cv-06-ART, 2012 WL 602812, at *2 (E.D. Ky. Feb. 23, 2012). Engaging in such speculation would be improper. *See McNutt*, 298 at 189.

Because the damage to the Jeep is not part of the plaintiffs' claims, and there is no evidence of the cost to repair or replace it, the accident photographs do not shed light on the likelihood that the amount in controversy exceeds $75,000.

---

[3] If it were the case that the Jeep was totaled, the Court would have to guess which Blue Book price is applicable because the defendants have not established the Jeep's specific model, year, or general condition.

*Medical Records and Bills:* The defendants also claim that the plaintiffs' attorney "provided many medical records and bills" to the defendants before the suits were filed. *McKinney*, R. 5 at 3; *Prater*, R. 4 at 3. What kind of injuries did the medical records indicate the plaintiffs had? Did they suffer broken bones, or mere cuts and bruises? And what amount of costs did the medical bills indicate the plaintiffs incurred? A few hundred dollars, or several thousand? The defendants do not provide any details, nor do they attach the records and bills to their responses. *See McKinney*, R. 5; *Prater*, R. 4. Guessing the value of the plaintiffs' medical claims would thus require even wilder speculation than estimating the value of the damage to the Jeep.

If anything, the fact that the defendants omitted details of the medical records and bills suggests that the documents show a very modest sum. Documented evidence, especially medical bills, can be very persuasive evidence of the amount in controversy—if the records indicate the plaintiff incurred significant injuries or costs. The most likely inference here is that the defendants did not include details from the records because they reveal that the plaintiffs suffered minor injuries and incurred modest costs. Why else would a party seeking to establish that the amount in controversy exceeds $75,000 omit such evidence?

*Allegations in the Complaint:* The defendants also stress that the plaintiffs' complaints seek compensation for both past and future medical expenses and lost wages. *McKinney*, R. 5 at 3; *Prater*, R. 4 at 3. While the complaint itself can be evidence of the amount in controversy, the plaintiffs' allegations do not provide the factual basis necessary to infer that more than $75,000 is at stake.

7

In some cases "a fair reading" of the complaint can establish the amount in controversy—even when that complaint seeks unspecified damages. *See Hayes*, 266 F.3d at 573. To do so, however, the removing defendant must point to "clear allegations" in the complaint that establish "a sum well in excess of the $75,000 minimum." *Id.* (quoting *Cook v. Winfrey*, 141 F.3d 322, 326 (7th Cir. 1998)). In other words, the amount in controversy must be self-evident from the nature of the plaintiff's claims. For example, in *Hayes* the jurisdictional amount was satisfied where the complaint sought damages for the royalties and gross values of an oil-and-gas lease on four wells—two of which had been producing for more than 50 years. *Id.* at 573. The obvious value of the oil and minerals extracted and the length of the contract easily supported the conclusion that the lease was worth more than $75,000. *See Ramsey v. Kearns*, No. 7:12-cv-06-ART, 2012 WL 602812, at *2 (E.D. Ky. Feb. 23, 2012) ("No great leap of imagination was needed to conclude that the *Hayes* plaintiffs sought more than $75,000."). But where a complaint provides no basis to ascertain the nature or extent of the plaintiff's damages, the allegations are not sufficiently "clear." *Hayes*, 266 F.3d at 573 (quoting *Cook*, 141 F.3d at 326).

That is the case with the complaints here. The complaints provide no insights into the two key variables to assess the value of their claims: the nature of the plaintiffs' injuries and their respective earning powers. Without either of those variables, the Court cannot even make an educated guess about: (1) what kind of medical care their injuries have required and will require; (2) how much that care would cost; (3) how much time they have missed and will miss from work; or (4) how much money they would have earned had they been at work. In short, the complaint does not even suggest a ballpark estimate for the dollar amount at issue here.

8

Given the incredible uncertainty involved with the plaintiffs' claims, the Court cannot say that it is more likely than not that the plaintiffs' claims exceed $75,000. If the Court found that the amount-in-controversy requirement was satisfied based on these complaints, it is difficult to imagine a car accident with diverse parties that could not be removed to federal court. Such an approach would eviscerate the rule that doubts are resolved in favor of remand, *Smith v. Nationwide Prop. and Cas. Ins. Co.*, 505 F.3d 401, 405 (6th Cir. 2007), and contravene the principle that federal courts are courts of limited jurisdiction, *see Gross v. Hougland*, 712 F.2d 1034, 1036 (6th Cir. 1983). Thus, the complaint does not provide evidence that the amount in controversy likely exceeds $75,000.

***Refusal to Stipulate to Damages:*** Finally, the defendants make much of the fact that the plaintiffs will not stipulate that they are each seeking less than $75,000. *See McKinney*, R. *Prater*, R. 7 at 5−6. In fact, they drafted proposed stipulations for both plaintiffs—declaring that each plaintiff would not claim, request, or accept a judgment above $75,000—and sent them to the plaintiffs' attorney. *McKinney*, R. 5-1; *Prater*, R. 4-1. But the plaintiffs declined to sign them. According to the defendants, the inevitable conclusion is that their claims must be worth more than $75,000.

The defendants' argument flips the jurisdictional burden on its head. As the removing party, they have the burden of producing evidence of the amount in controversy, not the plaintiffs. *See Gafford,* 997 F.2d at 158. Yet their argument—by using the defendants' refusal to sign the stipulation as evidence that the jurisdictional minimum is met—effectively forces the plaintiffs to prove that the amount in controversy is less than $75,000.

Furthermore, allowing removal here—based solely on the fact that the defendants will not stipulate to damages below $75,000—would warp diversity jurisdiction into a tool for

9

capping defendants' liability. As explained above, the evidence the defendants present is either totally unhelpful for ascertaining the value of the plaintiffs' claims, or suggests that their claims fall short of the jurisdictional minimum. To hold that the defendants can remove these cases based solely on the plaintiffs' refusal to stipulate to damages below $75,000 would force a Hobson's choice on plaintiffs. If they refuse to stipulate to the limitation, they abandon the forum they feel best serves their interests. And if they sign the stipulation, they eliminate the possibility that discovery might reveal their claims are worth more than they initially thought, or that the jury will return an unexpectedly large award. The per se approach pushed here would allow defendants to use removal as a tool to ensure that they either receive the forum they want or eliminate the possibility of an award greater than $75,000. Federal diversity jurisdiction was not meant for such strategic ends. Of course, that is not to say that defendants cannot determine what amount plaintiffs are seeking in damages. State court discovery provides the defendant this exact vehicle. The defendants can use requests for admissions to determine whether plaintiffs are seeking in excess of $75,000. *See Miller v. Malik*, No. 7:11–cv–74–ART, 2011 WL 2968428, at *2 (E.D. Ky. July 20, 2011) (noting that Court may consider refusal to respond to discovery request as "some evidence" of the amount in controversy and collecting cases). Unlike a state court discovery response—where the response is mandated—there is no requirement that plaintiffs respond to a defendant's request that they stipulate as to the amount in controversy. To hold otherwise would effectively invert the jurisdictional burden and force plaintiffs to choose between the forum they chose and the possibility—however remote—that their claim might be worth more than they currently think.

## CONCLUSION

The defendants need not fear that they have squandered their only chance for removal. The removal statute has been amended to ensure that defendants will have more than one shot at removal where it is warranted. *See* Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, § 103, 125 Stat. 758, 759–62; *see also Ramsey*, 2012 WL 602812 at *2 (explaining that the amendments "make it clear that defendants should pursue state-court discovery before removal"). Defendants now have a thirty-day window to remove a case to federal court whenever they receive new state-court discovery from the plaintiff that establishes the amount in controversy. *See* 28 U.S.C. § 1446(c)(3)(A); *see also Minix v. Kawasaki Motors Corp.*, No. 7:09-cv-90-ART, 2009 WL 2212282 (E.D. Ky. July 23, 2009) ("It is well established that if a case is remanded to state court for lack of subject matter jurisdiction, it can be removed a second time if new developments—such as discovery responses—reveal that the amount-in-controversy requirement for diversity jurisdiction is in fact satisfied."). Thus, the proper course is to remand this case to the state court. If the defendants discover evidence that actually speaks to the amount in controversy, they may seek removal again. *See Giffin v. Runyons*, No. 7:11-cv-146-ART, 2011 WL 5025074, at *4 (E.D. Ky. Oct. 21, 2011).

Accordingly, it is **ORDERED** that:

(1) The plaintiff's motion for remand in *McKinney v. ICG, LLC*, No. 7:13-cv-12 (March 1, 2013), R. 7, is **GRANTED**.

   (a) The case is **REMANDED** to the Johnson County Circuit Court.

   (b) The Clerk shall **STRIKE** this case from the Court's active docket.

    (c)    All other pending motions are **DENIED** as **MOOT**, and all pending deadlines are **VACATED**.

(2)    The plaintiff's motion for remand in *Prater v. ICG, LLC*, No. 7:13-cv-13 (March 1, 2013), R. 6, is **GRANTED**.

    (a)    The case is **REMANDED** to the Johnson County Circuit Court.

    (b)    The Clerk shall **STRIKE** this case from the Court's active docket.

    (c)    All other pending motions are **DENIED** as **MOOT**, and all pending deadlines are **VACATED**.

This the 7th day of May, 2013.

Signed By:
*Amul R. Thapar* AT
United States District Judge